NOTICE

Decision filed 11/18/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200213-U

NO. 5-20-0213

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 06-CF-870 |
| | ) | |
| JAMES CHERRY, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the defendant did not satisfy the "cause" prong of the cause-and-prejudice test, the circuit court did not err in denying him leave to file a successive postconviction petition, and since any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, James Cherry, appeals the circuit court's order denying leave to file a successive postconviction petition. Defendant's appointed attorney, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as counsel, arguing that this appeal presents no arguably meritorious issues. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion. This court provided defendant with an opportunity to file a response, and he has done so. However, after considering OSAD's motion and supporting memorandum and defendant's response, and the entire record on appeal, we agree that this appeal

1

presents no arguably meritorious issue. Therefore, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      Following a jury trial, defendant was convicted of first degree murder and sentenced to 50 years' imprisonment. Evidence at trial showed that defendant shot Michael Roddy and his daughter Tania. Michael Roddy's wound was fatal. According to Tania and another witness, defendant pointed a gun at them during an argument. Defendant and Michael Roddy "tussled" over the gun. Defendant, on the other hand, testified that it was Michael who pulled the gun and pushed him as he was trying to leave.

¶ 5      On direct appeal, defendant argued only that his sentence was excessive. This court affirmed. *People v. Cherry*, 2013 IL App (5th) 110452-U.

¶ 6      In 2014, defendant filed a postconviction petition in which he alleged that appellate counsel was ineffective for not communicating with him prior to filing the appeal. The circuit court summarily dismissed the petition on the ground that defendant had not specified how he was prejudiced by counsel's alleged ineffectiveness.

¶ 7      In 2020, defendant sought leave to file a successive postconviction petition. Defendant acknowledged that a defendant must generally allege cause and prejudice in order to file a successive petition, but argued that because a "fundamental miscarriage of justice" had occurred, he should be afforded some remedy.

¶ 8      The attached petition raised four substantive claims: (1) trial counsel was ineffective for failing to (a) request that the gun be dusted for fingerprints, (b) ask that the victim's hands or clothes be tested for gunshot residue, (c) articulate a cohesive defense strategy, (d) challenge the legality of defendant's arrest, (e) seek dismissal of the charges, and (f) seek reconsideration of the

2

sentence; (2) appellate counsel was ineffective for failing to raise trial counsel's failure to object to the prosecutor's allegedly improper comments in closing argument to the effect that the jurors had to decide which witnesses to believe; (3) the truth-in-sentencing statute requiring him to serve 100% of his sentence was unconstitutional; and (4) defendant was never admonished that he would have to serve a term of mandatory supervised release (MSR) after his prison sentence.

¶ 9 The trial court denied leave to file, finding that the issues could have been raised in the first petition. Defendant timely appealed.

¶ 10                                    ANALYSIS

¶ 11 OSAD contends that there is no meritorious argument that the court erred by denying defendant leave to file a successive petition. OSAD concludes that the ineffective-assistance claims could have been raised in the first petition and the remaining two claims fail on the merits in any event.

¶ 12 The Post-Conviction Hearing Act (Act) provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at his trial or sentencing. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). Within 90 days of its filing, the circuit court may dismiss a petition if it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2020). The Act contemplates the filing of only one petition. *Id.* § 122-1(f). The prohibition on successive petitions will be relaxed where a defendant (1) satisfies the cause-and-prejudice test or (2) makes a colorable claim of actual innocence. *People v. Edwards*, 2012 IL 111711, ¶¶ 22-24. "Cause" refers to an objective factor external to the defense that impeded the defendant's ability to raise the claim earlier. *Pitsonbarger*, 205 Ill. 2d at 460.

¶ 13 Clearly, defendant's ineffective-assistance claims were based on counsels' actions before trial, during trial, or on direct appeal, and thus could have been raised in his initial postconviction

3

petition. Defendant alleged no factors external to the defense that prohibited him from raising those issues there.

¶ 14 As to the latter two issues, concerning truth-in-sentencing and MSR, defendant alleged that he was unaware of them. However, the supreme court has held that a defendant's ignorance of the law may never be "cause" for filing a successive postconviction petition:

"This court has made very clear that 'all citizens are charged with knowledge of the law' and that '[i]gnorance of the law or legal rights will not excuse a delay in filing a lawsuit.' " *People v. Evans*, 2013 IL 113471, ¶ 13 (quoting *People v. Lander*, 215 Ill. 2d 577, 588 (2005)).

¶ 15 In *Evans*, "the only excuse that defendant proffers for not raising the MSR claim sooner is that he only 'just discovered' that he would be subject to a three-year term of MSR following his release." *Id.* The court noted that, when defendant was sentenced, "the Unified Code of Corrections expressly provided that, by operation of law, every sentence 'shall include as though written therein a [three-year term of MSR] in addition to the term of imprisonment.' " *Id.* (quoting 730 ILCS 5/5-8-1(d)(1) (West 2004)). Thus, the defendant was presumptively charged with knowledge of that provision, and his " 'subjective ignorance of it' " was not " 'an objective factor that impeded' " his ability to raise the MSR claim sooner. *Id.*

¶ 16 *Evans* clearly disposes of defendant's MSR claim. Defendant argues that the truth-in-sentencing statute was unconstitutional, permitting him to raise the issue at any time. However, defendant's claim that the statute is unconstitutional is simply wrong.

¶ 17 The legislature's first attempt to enact a truth-in-sentencing statute, Public Act 89-404, was invalidated by the supreme court on single-subject grounds in *People v. Reedy*, 186 Ill. 2d 1, 11-12 (1999). However, while *Reedy* was working its way through the courts, the legislature

4

reenacted the truth-in-sentencing provisions in Public Act 90-592. Defendant asserted in his petition that, because it was passed before *Reedy* was decided, Public Act 90-592 (Pub. Act 90-592 (eff. June 19, 1998)) was also unconstitutional. However, *Reedy* expressly rejected this argument, holding that the amendatory act cured the defects in the original legislation. *Reedy*, 186 Ill. 2d at 17.

¶ 18    In his motion, defendant argued that, despite the cause-and-prejudice test, he must be afforded some remedy where a "fundamental miscarriage of justice" had occurred. He cited, presumably by way of example, a laundry list of statutes, rules, and cases that provide for the consideration of otherwise defaulted issues. But none of them apply here. Defendant cites, for example, Rule 60 of the Federal Rules of Civil Procedure, which clearly has no application to a state-law postconviction proceeding.

¶ 19    Defendant cites out of context some passages from *Murray v. Carrier*, 477 U.S. 478 (1986), in support of a broad argument that courts must find some way to reach otherwise defaulted issues if justice demands it. However, defendant overlooks that the *Murray* Court, relying on the cause-and-prejudice test, reinstated the district court's dismissal of the defendant's *habeas corpus* petition. *Id.* at 497. Thus, *Murray* does not stand for the broad proposition that a court must always search for some mechanism to reach defaulted claims. Indeed, it supports the proposition that the cause-and-prejudice test is an appropriate tool to decide whether an otherwise defaulted claim should be considered.

¶ 20    The Court did acknowledge that " '[i]n appropriate cases' " the principles of comity and finality that inform the concepts of cause and prejudice " 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Id.* at 495 (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)). However, defendant's nonspecific and speculative allegations of ineffective assistance

5

of counsel fall far short of making such a showing. Defendant claims, for example, that counsel should have challenged the validity of his arrest without suggesting any legal basis for doing so. He claims that counsel should have had the gun tested for fingerprints, but does not inform us what such testing might have showed. He presumably thought that Roddy's fingerprints might be on it, but given that all witnesses to the fight testified that both men touched the gun at some point, it is difficult to see how proving that Roddy's prints were on it would have altered the trial's outcome. We have already held that defendant's truth-in-sentencing claim fails on the merits and that his MSR claim was forfeited.[1] Thus, defendant cannot establish that his incarceration is so "fundamentally unjust" that we should disregard the statutorily mandated cause-and-prejudice test to reach his tardy claims.

¶ 21                                  CONCLUSION

¶ 22    Accordingly, we agree with OSAD that this appeal presents no issue of even arguable merit. We grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 23    Motion granted; judgment affirmed.

---

[1]OSAD also argues, correctly, that defendant's MSR claim fails on the merits. Defendant cited *People v. Russell*, 345 Ill. App. 3d 16 (2003), where the appellate court held that a defendant who pled guilty in exchange for a sentencing cap but was not informed that an MSR term would be added to it was entitled to have his sentence reduced so that the entire sentence, including MSR, was within the cap to which he agreed. The supreme court reached the same conclusion in *People v. Whitfield*, 217 Ill. 2d 177 (2005). However, as defendant was convicted and sentenced following a jury trial, *Russell* and *Whitfield* simply do not apply.