NOTICE

Decision filed 05/19/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250293-U

NO. 5-25-0293

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edgar County. |
| | ) | |
| v. | ) | No. 04-CF-26 |
| | ) | |
| ERIC T. SMEADER, | ) | Honorable |
| | ) | Mark S. Goodwin, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices McHaney and Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm the trial court's second-stage dismissal of the defendant's postconviction petition as untimely. In addition, we find that postconviction counsel provided reasonable assistance and substantially complied with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

¶ 2   The defendant, Eric Smeader, entered into a negotiated plea of guilty to one count of first degree murder under a theory of accountability, and was sentenced to 45 years in the Illinois Department of Corrections. Judgment was entered on his conviction in January 2005. In 2021, the defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). In his petition, among other things, the defendant raised an emerging adult proportionate penalties claim. The trial court failed to review the defendant's petition within the 90-day time frame required by the Act, which resulted in the petition moving

1

forward to the second stage of postconviction proceedings.[1] Pursuant to the Act, the trial court appointed counsel for the defendant. Postconviction counsel filed an amended postconviction petition on behalf of the defendant. The State filed a reply to the defendant's amended petition. In response, postconviction counsel filed a combined response and supplemental petition. The trial court issued a written order that dismissed the defendant's amended postconviction petition. On appeal, the defendant alleges that his cause should be remanded for further second-stage postconviction proceedings in compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Specifically, the defendant claims that postconviction counsel failed to substantially incorporate a psychologist report, failed to support other claims with evidence, failed to document the defendant's timeliness argument, and did not attach a verification affidavit from the defendant. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                                    I. BACKGROUND

¶ 4        In 2005, at age 19, the defendant was charged with two first degree murders. On January 18, 2005, the State proposed a plea agreement to one count of first degree murder with a 45-year sentence. The defendant pleaded guilty. The trial court accepted the defendant's plea and issued the recommended sentence of 45 years in the Illinois Department of Corrections (IDOC). Judgment on the defendant's plea was entered that same day. The defendant did not file a motion to withdraw the guilty plea, or any other postplea motions. No appeal was taken after the entry of the judgment.

¶ 5        On June 28, 2021, the defendant filed a *pro se* postconviction petition. In his petition, the defendant alleged that "new retroactive substantive law" found in *Miller* applied to the defendant.

---

[1]According to the record, the defendant's *pro se* petition was not considered in a timely manner, and pursuant to 725 ILCS 5/122-2.1, was docketed for a second-stage proceeding. Postconviction counsel was appointed for the defendant.

See *Miller v. Alabama*, 567 U.S. 460 (2012). The defendant also claimed that he had hired an attorney from West Virgina to "write up his postconviction" and that this attorney did not do so. Further, the defendant claimed that the Covid-19 pandemic caused a limitation on his access to the prison's law library. In support of the many allegations in his petition, the defendant attached numerous exhibits to his *pro se* postconviction petition. One of the exhibits was a personal developmental assessment drafted by a psychologist, Dr. James Garbarino.[2] In this report, Garbarino described several general developmental-psychology principles, and then discussed *Miller* and how it applied to the defendant's case. Specifically, Garbarino outlined the many instances of childhood trauma suffered by the defendant. Garbarino reported that the defendant had been physically and mentally abused by his father; the defendant was sexually abused as a child by a woman in her twenties; the defendant suffered from drug abuse at a young age; and the defendant was hospitalized as a child with bipolar disorder. Based on his assessment of the defendant, Garbarino opined that the defendant's "childhood and adolescent experience of maltreatment in the context of a socially toxic environment encompasses multiple, significant mitigating factors that should have been considered in the original sentencing decision in his case." Finally, Garbarino wrote, "Eric is a good candidate for resentencing and eventual release."

¶ 6    On August 25, 2021, the trial court entered an order that docketed the defendant's petition for further consideration. Postconviction counsel was appointed to represent the defendant. Subsequently, there were several continuances granted by the trial court that were attributable to the defendant. On July 25, 2023, approximately two years later, the defendant's appointed counsel filed an amended postconviction petition. In his amended petition, the defendant requested, among

---

[2]The record is unclear on whether the defendant successfully attached Dr. Garbarino's report to his *pro se* postconviction petition; however, it was included in later filings.

other things, that his 45-year sentence of imprisonment be reconsidered. The defendant's petition stated that at the time of the offense, as a young adult, he lacked the maturity to fully appreciate the consequences of his actions. The defendant alleged that his initial sentence was a *de facto* life sentence that was imposed absent a consideration of the *Miller* factors, which "violated the proportionate penalties clause of the Illinois Constitution and violated the 8th Amendment of the Constitution of the United States." The amended petition went on to indicate that at the time of the offense, the defendant lacked maturity and was more like a juvenile, than a mature adult. Postconviction counsel attached several pages of exhibits that purported to show how the defendant had been rehabilitated since his incarceration.

¶ 7    The amended petition further explained that the failure to timely file the petition was not due to the defendant's culpable negligence. The defendant supported this assertion by claiming that he did not have access to a law library on a regular basis during his incarceration, and that he is not trained in the law. The defendant additionally claimed that the Covid-19 pandemic created a lockdown which prohibited the defendant from accessing the law library. Further, the defendant claimed he had hired a private attorney in the past, but no petition had been filed.

¶ 8    On August 24, 2023, the State filed a reply to the defendant's amended postconviction petition. The State alleged that the defendant's postconviction petition was not timely in that the petition was filed nearly 16½ years after the date of his conviction. The State noted that the defendant's petition lacked specific details behind the reasons for the defendant's untimely filing. Additionally, although the defendant was relying on *Miller* for his constitutional claim, the State also explained that *Miller* had been decided on June 25, 2012, and the defendant delayed another nine years after that decision in order to file his postconviction petition. The State further alleged that the defendant did not receive a *de facto* life sentence and even if he did, the defendant was an

4

adult at the time of his conviction. Therefore, a *de facto* life sentence was not prohibited when applied to adult offenders. The State went on to indicate that the defendant had failed to show that a *de facto* life sentence was unconstitutional in his case, and absent that showing, the defendant should not be allowed to further benefit from his plea agreement. The State requested that the trial court deny the defendant's postconviction petition.

¶ 9    On August 28, 2023, the trial court received a letter written by the defendant that raised his concerns with the performance of his appointed postconviction counsel. One of the defendant's concerns was that postconviction counsel's amended postconviction petition omitted the report of Garbarino. Attached to the defendant's letter was correspondence between the defendant and his postconviction counsel. After learning of the defendant's letter, postconviction counsel filed a motion for leave to withdraw as his attorney of record. In postconviction counsel's motion, she argued that the defendant's letter breached the confidentiality of the attorney-client relationship. On October 31, 2023, the trial court held a hearing on counsel's motion to withdraw. The trial court admonished the defendant regarding the attorney-client relationship and denied postconviction counsel's motion. On November 22, 2024, the trial court heard argument from postconviction counsel on a second motion to withdraw as the attorney of record for the defendant. The trial court continued the second motion to withdraw pending postconviction counsel's filing of a response to the State's reply. The trial court explained that after it received postconviction counsel's response to the State's reply, it would make a ruling on the defendant's amended postconviction petition.

¶ 10    On December 27, 2024, postconviction counsel filed a combined supplemental postconviction petition and response to the State's reply. In the supplement to the defendant's amended postconviction petition, counsel first added details explaining why the failure to file his

postconviction petition was not the result of his culpable negligence. The supplemental petition then described the state of the law as it pertained to sentencing young adults after *Miller*. Postconviction counsel alleged that the defendant should be allowed to challenge his sentence as a *de facto* life sentence which violated the eighth amendment of the United States Constitution and the proportionate penalties clause of the Illinois Constitution. In support of his supplemental petition, postconviction counsel set forth the defendant's background and the struggles that he experienced in his childhood. Attached to the supplemental petition, as Exhibit GG, was the report of Dr. James Garbarino. The report contained opinions regarding the defendant's circumstances and the immaturity of adolescent brains. The defendant, according to the supplemental petition, had "suffered from childhood trauma, substance abuse issues, and mental health issues before the murder was committed." The supplemental petition further alleged that all of these issues "played a factor in his lack of maturity at the time of the murder and undoubtedly had a negative impact on his emotional development as a young adult. (Defendant's Exhibit GG)." In addition, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). According to the certificate, postconviction counsel had consulted with the defendant and the defendant proofread each and every document prior to filing except for the most recently filed document. The record indicates that counsel was referring to the defendant's supplemental postconviction petition and response to the State's reply. The certificate also claimed that postconviction counsel read the trial record and report of proceedings. Finally, the certificate claimed that counsel made any necessary amendments to the defendant's *pro se* postconviction petition for adequate presentation of the defendant's contentions.

¶ 11    On March 31, 2025, the trial court entered a written order dismissing the defendant's postconviction petition at the second stage of proceedings. In the order, the trial court found that

6

the defendant's petition was untimely; that the defendant waived his claim of a constitutional error through his fully negotiated guilty plea; and that the defendant failed to make a substantial showing of a constitutional violation. In addition, the trial court found that *Miller* did not apply to the defendant in that he was a 20-year-old adult when he was sentenced for a crime that he committed when he was 19 years old. The defendant now appeals the trial court's second-stage dismissal of the defendant's amended postconviction petition.

¶ 12                                    II. ANALYSIS

¶ 13     On appeal, the defendant first claims that counsel did not provide reasonable assistance and did not comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The defendant claims that counsel did not (1) substantially incorporate a psychologist report, (2) failed to support other important claims with evidence, and (3) did not document the defendant's timeliness argument.[3] Therefore, the defendant appeals the second-stage dismissal of his amended postconviction petition, and he requests that his cause be remanded to the trial court for further second-stage postconviction proceedings that comply with Rule 651(c).

¶ 14     The Act permits a *pro se* incarcerated defendant to challenge his conviction by asserting that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2022). The Act contains three stages. *People v. Johnson*, 2021 IL 125738, ¶ 24. First-stage postconviction proceedings require a petitioner to allege sufficient facts to state the "gist" of a constitutional claim for the petition to be advanced to the second stage. *Johnson*, 2021 IL 125738, ¶ 26. At the second stage, the postconviction court may appoint counsel for an indigent petitioner and counsel may make any amendments that are necessary to the petition previously

---

[3]The defendant initially alleged that postconviction counsel did not attach a verification affidavit, but the defendant has withdrawn this argument in his reply brief.

filed by the *pro se* defendant. *Johnson*, 2021 IL 125738, ¶ 27. After counsel has reviewed the petition, and if necessary, amended the petition, the State may file a motion to dismiss or file an answer. *Johnson*, 2021 IL 125738, ¶ 27. If the petition is not dismissed, it will advance to the third-stage proceedings in the form of an evidentiary hearing. *Johnson*, 2021 IL 125738, ¶ 27.

¶ 15    If the trial court appoints counsel at the second stage of postconviction proceedings, counsel's role is to shape the petitioner's complaints into the proper legal form and to present those complaints to the court. *People v. Addison*, 2023 IL 127119, ¶ 19. The statutory standard under the Act afforded to petitioners by counsel is that of "reasonable assistance" and that standard is "significantly lower than the one mandated at trial by our state and federal constitutions." *People v. Huff*, 2024 IL 128492, ¶ 21.

¶ 16    To ensure that petitioners receive the proper level of assistance, counsel is governed by Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). *Addison*, 2023 IL 127119, ¶ 20. Rule 651(c) provides that counsel "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Compliance is mandatory, "but once postconviction counsel files a Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises." *Addison*, 2023 IL 127119, ¶ 21. Therefore, a defendant "bears the burden of overcoming that presumption by showing that postconviction counsel did not substantially comply with the strictures of the rule." *Addison*, 2023 IL 127119, ¶ 21. The defendant may overcome the presumption by demonstrating that postconviction counsel did not make all of the necessary amendments to the defendant's *pro se* petition. *Addison*, 2023 IL 127119, ¶ 21. The Illinois Supreme Court has held that remand is

required where postconviction counsel failed to fulfil the duties required under Rule 651(c), without consideration of whether the postconviction petition's claims have merit. *Addison*, 2023 IL 127119, ¶ 33. We review the dismissal of a postconviction petition at the second stage and whether postconviction counsel complied with Rule 651(c) *de novo*. *People v. Smith*, 2026 IL App (1st) 231635, ¶ 13.

¶ 17                                    A. Defendant's Petition is Time Barred

¶ 18      In the instant case, the trial court ordered the defendant's petition dismissed as untimely because it did not adhere to the three-year filing requirement pursuant to the Act. 725 ILCS 5/122-1(c) (West 2022). The defendant's claim on appeal is that postconviction counsel did not comply with Rule 651(c), because postconviction counsel "misframed the arguments" and did not provide "available evidentiary support" of the defendant's claim that the untimely filing of his petition was not due to his culpable negligence. Further, the defendant alleges that postconviction counsel had a "better, fact-based option" in addressing the defendant's argument for his untimeliness.

¶ 19      Under the Act, "[i]f a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2022). The Illinois Supreme Court has held that the "culpably negligent standard contained in section 122-1(c) contemplates something greater than ordinary negligence and is akin to recklessness." (Internal quotation marks omitted.) *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). Our supreme court further described this concept as an analysis wherein "courts must often determine whether litigants have exercised due diligence or, conversely, have willfully disregarded the process of the court or were so indifferent to it that they should be chargeable with culpable negligence." *Boclair*, 202 Ill. 2d at 107 (citing 735 ILCS 5/2-1401 (West 2000)). Thus, for

postconviction counsel to be in compliance with Rule 651(c) regarding timeliness, counsel must inquire of the petitioner whether there is any excuse for the delay in filing and must further examine the record and pleadings on file in order to determine whether there are any facts to present that excuse petitioner's delay. See *Smith*, 2026 IL App (1st) 231635, ¶ 21. "Whether delay is due to culpable negligence depends not only on when the claim is discovered but on how promptly the defendant takes action after the discovery." *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004). Before we examine the defendant's conduct, however, we must first determine whether postconviction counsel complied with Rule 651(c). Compliance with Rule 651(c) is mandatory; therefore, we address postconviction counsel's assistance as to the issue of timeliness. See *Addison*, 2023 IL 127119, ¶ 19.

¶ 20    Here, the defendant pled guilty in 2005, and he did not file an initial appeal. The defendant filed his *pro se* postconviction petition in 2021. To address the untimely nature of the defendant's petition, postconviction counsel amended the defendant's petition and alleged that the defendant's access to the law library was limited during his incarceration, that the defendant was not trained or experienced in the practice of law, that the Covid-19 pandemic limited his access to the law library, and that he had retained counsel from West Virginia to handle his postconviction petition, but that the attorney did not file any petition. Postconviction counsel further stated in the defendant's amended petition that new law arising out of *Miller* was only available to the defendant when it was decided in 2012. The amended and supplemental petition mirrored the claims found in the defendant's *pro se* petition, but with the proper legal structure.

¶ 21    The defendant alleges that postconviction counsel's untimeliness argument was conclusory as she did not specifically reference in the petition those available documents that were included in the supplemental petition. The defendant, however, does not identify with any particularity any

10

additional facts that postconviction counsel could have included in the amended petition to support his claim that he was not culpably negligent, other than an allegation that postconviction counsel did not reference studies that were already attached as exhibits. More notably, the defendant fails to sufficiently demonstrate the reason for the approximate nine-year delay that occurred from 2012 when *Miller* was decided to the date of the defendant filing his *pro se* postconviction petition in 2021. *Miller* and its relationship to the science of immaturity in young adults was the essence of the defendant's claim, and the defendant would have been on notice as of 2012 that he may have had a constitutional proportionate penalties claim. The defendant did not, however, offer any specifics to explain his lack of diligence in pursuing his constitutional claim under *Miller*, other than some vague allegations that he had hired private counsel to file a petition and that he was denied access to the law library. Based on the record before us, we find that postconviction counsel used all of the available facts claimed by the defendant to shape his timeliness argument to the best of her ability. The defendant's reliance on the facts alleged did not support the nine-year delay in filing the defendant's postconviction petition, after *Miller* was decided in 2012. Additionally, we find that postconviction counsel complied with Rule 651(c) when she amended the defendant's petition and framed the allegations, to the best of her ability, supporting the defendant's claim that he should not be held culpably negligent for the failure to timely file his postconviction petition. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Consequently, we find that the defendant has failed to rebut the presumption of reasonable representation, and we find that postconviction counsel provided reasonable assistance under Rule 651(c).

¶ 22    Despite postconviction counsel's reasonable efforts, the trial court concluded that the defendant's petition was untimely because it did not adhere to the three-year filing requirement pursuant to the Act. 725 ILCS 5/122-1(c) (West 2022). The trial court noted in its order that the

11

allegations set forth by the defendant, regarding the delay in filing his petition, were "general and conclusory and unsupported by any time frames or other necessary detail." More specifically, the trial court found that the defendant's claim of being denied access to the law library, absent any additional explanation or context, did not provide a valid reason for the significant delay in filing the petition. In addition, the trial court found that the defendant's lack of a legal education did not contribute to his lack of culpable negligence. Finally, the defendant alleged that the Covid-19 pandemic limited his access to the law library. Once again, the trial court found this was not sufficient to excuse the timeliness requirement of the Act.

¶ 23    We agree with the trial court. As previously noted, postconviction counsel provided the trial court with all of the facts that were available to her to address the issue of timeliness. Postconviction counsel rendered reasonable assistance when she amended the petition and filed the supplemental postconviction petition. Postconviction counsel made the arguments that mirrored the defendant's *pro se* postconviction petition by providing the trial court with all of the available information that the defendant intended to assert in defense of the State's timeliness argument. The defendant's dilemma here was, as determined by the trial court, that all of the defendant's allegations were insufficient to excuse his failure to file the petition in a timely manner. While it may be true that the defendant did not have access to the law library on a regular basis during his incarceration, we conclude that this does not adequately justify the defendant's failure to file a postconviction petition for over 16 years. See *People v. Lander*, 215 Ill. 2d 577 (2005). Moreover, the defendant stated in his *pro se* petition, filed in 2021, that he had hired an attorney to draft his petition a year prior. The defendant supported this claim with a copy of a letter that was sent by the West Virginia Office of Lawyer Disciplinary Counsel to the attorney that he retrained, notifying the attorney of a bar complaint. The defendant attached this letter, dated

12

November 9, 2020, to his *pro se* postconviction petition. Therefore, even though the defendant made a claim that he was not trained or experienced in the practice of law, he was aware that he required the assistance of counsel and did not take any steps to further raise his claim prior to hiring the attorney in 2020. Finally, the defendant claimed that the COVID-19 pandemic excused his culpable negligence. The defendant attached to his *pro se* postconviction petition, a copy of a memorandum issued by IDOC addressing confirmed Covid-19 cases within the facilities dated March 25, 2020. The defendant pled guilty in 2005, and the Covid-19 pandemic began in approximately 2020, some 15 years after the defendant's judgment of conviction. The Covid-19 pandemic was not an excuse for the defendant's failure to file a postconviction petition. Therefore, we find that the defendant did not exercise the due diligence necessary to demonstrate a lack of culpable negligence in filing his postconviction petition. See *Lander*, 215 Ill. 2d 577.

¶ 24    Lastly, the defendant asserted that the decision in *Miller* established new legal precedent relevant to his case. *Miller* was decided on June 25, 2012, four years after the expiration of the applicable statutory time limit[4] pursuant to the Act and nine years before the defendant filed his *pro se* postconviction petition. 725 ILCS 5/122-1(c) (West 2022). It is true that the U.S. Supreme Court in *Miller* acknowledged that "[b]ecause juveniles have diminished culpability and greater prospects for reform, we explained, 'they are less deserving of the most severe punishments.' " *Miller*, 567 U.S. at 471 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). The *Miller* Court went on to address the significance in maturity between juveniles and adults, but this was not new law. The *Miller* Court was primarily reflecting on its prior decisions in *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 560 U.S. 48 (2010). And even if *Miller* represented an

---

[4]The defendant's judgment was in 2005, and the Act requires allows for postconviction petitions to be filed no later than three years from the date of conviction. See 725 ILCS 5/122-1 (West 2022).

evolution in the law, the decision pertained to juveniles, which the defendant was not at the time he committed the murder to which he pled guilty. In light of the foregoing, we find that the trial court properly dismissed the defendant's postconviction petition based on the fact that the defendant did not timely file his postconviction petition and that the issues he raised in defense of the State's timeliness argument had no merit and did not excuse his culpable negligence.

¶ 25    B. No Relief Warranted on Defendant's Remaining Claims

¶ 26    Our findings that the defendant's petition was untimely and that postconviction counsel provided reasonable assistance in presenting the defendant's claims regarding the untimeliness of his petition are dispositive of this appeal; however, the defendant has raised additional claims of postconviction counsel's noncompliance with Rule 651(c). Therefore, we choose to address these claims in turn. First, the defendant claims that postconviction counsel did not address the elements of his proportionate penalties claim and that postconviction counsel "failed to support other important claims with evidence." Second, the defendant alleges that postconviction counsel failed to reference certain sections of Garbarino's report, which provided the basis for the defendant's above-referenced claims. We disagree.

¶ 27    As stated above, postconviction counsel filed the defendant's amended postconviction petition and supplemental petition and attached Garbarino's report. In the supplemental petition, postconviction counsel addressed the contents of the report and further explained how *Miller* applied to the defendant. Additionally, in the defendant's initial amended postconviction petition, postconviction counsel argued that in sentencing the defendant, the trial court did not consider the *Miller* factors and attached the docket entry from the defendant's plea hearing that showed the trial court's noncompliance with *Miller*. Therefore, we find that counsel provided reasonable assistance regarding the defendant's remaining claims pursuant to Illinois Supreme Court Rule 651(c).

14

¶ 28                              III. CONCLUSION

¶ 29    For the above reasons, we affirm the judgment of the trial court dismissing the defendant's

postconviction petition at the second stage.

¶ 30    Affirmed.